## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHAIDON BLAKE,

                **Plaintiff,**

      **v.**                       **CASE NO. 21-3176-SAC**

MARSHA BOS, et al.,

                **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff Shaidon Blake, a state prisoner at the El Dorado Correctional Facility (EDCF) in El Dorado, Kansas, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *in forma pauperis*. For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.

### I.  Nature of the Matter before the Court

Plaintiff's Complaint alleges he has been placed and held in segregation for over a year without due process and in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

### A.  Count I: Violation of Due Process (Fourteenth Amendment)

Plaintiff alleges that at a disciplinary hearing conducted by telephone on August 17, 2020 at 0932 hours, Hearing Officer Randolph repeatedly warned Plaintiff not to assert as a defense that the reporting officer, CSI Hoffarth, was lying. Plaintiff believes Randolph wanted to keep his allegations of illegal conduct on the part of Hoffarth out of the official record so she would not

have to report Hoffarth.  Plaintiff claimed camera footage would show that Hoffarth maintained an inappropriate relationship with another inmate and alleged that she wrote Plaintiff's disciplinary report to protect that relationship.  When Plaintiff refused to change his testimony, Randolph hung up, thus discontinuing the hearing.

The next day, Randolph continued the hearing in absentia with the justification that Plaintiff made disrespectful comments toward Hoffarth and, after being warned several times, hung up the phone.  According to the Complaint, Randolph stated in the hearing record that staff assistance was provided to Plaintiff after he hung up, and Plaintiff was represented by Unit Team Knapp at the continued hearing.  Plaintiff denies that he received any staff assistance.

Plaintiff further claims that Randolph documented four other hearings with Plaintiff on August 17, 2020 at 0932 hours.  Plaintiff argues that Randolph could not have conducted five hearings with him at the same time.  In addition, Plaintiff alleges that Lieutenant Johnson also documented a hearing with Plaintiff on August 17, 2020 at 0932 hours.

Plaintiff asserts that these false reports caused him to be on segregation for over six months for infractions that were false, without any hearings.  He argues it is his constitutional right to have a hearing on every disciplinary infraction where he can present a defense and face his accusers.

Also in support of Count I, Plaintiff states that he filed a grievance on the hearing issue.  In response, Unit Team Manager Martin moved him to another segregation building.  Plaintiff alleges he informed Martin many times that the hearings that had him stuck in segregation were never held.  She did nothing to check Plaintiff's account of events.  Plaintiff argues this makes her complicit in the violation of his constitutional rights.

Similarly, Plaintiff alleges UTM Hoepner and Classification Administrator Bos were aware of Plaintiff's claims and did nothing to investigate and correct the situation, thus making them complicit as well.

Lastly, Plaintiff claims CDI Chiles wrote a false report stating Plaintiff said he was a threat and capable of causing problems on the compound. According to Plaintiff, this report was used as justification to keep Plaintiff in segregation indefinitely. Plaintiff then describes an incident which is the subject of another of his pending lawsuits (Case No. 21-cv-3046) where he alleges he was forced to go to the hospital.

**B. Count II – Cruel and Unusual Punishment (Eighth Amendment)**

Plaintiff alleges that due to each defendant's actions as described above, he has been in segregation for an indefinite amount of time and that this amounts to cruel and unusual punishment. He states he has been in segregation for over a year and has been free of any major infractions. Plaintiff says that at his monthly segregation reviews, he is told that his release from segregation is not up to the Unit Team, unlike other inmates. He has been given no end date for his confinement on segregation and no reason for his segregation to continue.

Plaintiff further claims he has been subjected to atypical, cruel and unusual conditions by being denied the ability to order food from the commissary while in segregation.

**C. Defendants and Requested Relief**

Plaintiff names as defendants the following personnel at EDCF: Marsha Bos, Classification Administrator; J. Hoepner, Unit Team Manager; (FNU) Martin, Unit Team Manager; A. Randolph, Sergeant, Disciplinary Hearing Officer; A.J. Johnson, Lieutenant, Disciplinary Hearing Officer; (FNU) Knapp, Unit Team Supervisor; and (FNU) Chiles, SORT Officer. He seeks a return to the

custody of the State of Maryland, a restraining order against all defendants involved in retaliatory actions, release from segregation, and punitive damages for the mental anguish he has suffered.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.  28 U.S.C. § 1915A(a).  Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency.  *See* 28 U.S.C. § 1915(e)(2).  Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

Plaintiff's Complaint is subject to dismissal for the following reasons.

### A. Count I – Due Process

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).  This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x. 988, 992 (10th Cir. 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

If a protected liberty interest is implicated, the following procedures must be provided in a prison disciplinary hearing:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985).  The results of the disciplinary hearing must also be supported by "some evidence in the record." *Id.* at 454.

Plaintiff does not allege the loss of good conduct time or any other disciplinary action that affected the duration of his sentence.  Therefore, to establish a protected liberty interest, Plaintiff must show that he has been subjected to conditions imposing an atypical and significant hardship in relation to the ordinary incidents of prison life.

Plaintiff's placement in segregation in and of itself does not constitute an atypical and significant hardship.  An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or place of confinement.  *See Wilkinson v. Austin*, 545 U.S. 209, 221–222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).  Indeed, inmates have "no legitimate statutory or constitutional entitlement" even if a new classification would cause that inmate to suffer a "grievous loss."  *Moody,* 429 U.S. at 88 n.9.  Instead, the custody classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."  *Meachum*, 427 U.S. at 225.  "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison."  *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).  Thus, an inmate's placement in administrative segregation is a classification matter that is purely within the discretion of prison officials, and generally not reviewable in federal court.  *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  Segregation is not limited to instances of punishment but may be imposed for administrative purposes.  Administrative segregation implicates constitutional due process only if the

confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486.

Plaintiff alleges that his assignment to segregation imposes an atypical and significant hardship in relation to the ordinary incidents of prison life because it is indefinite. The Tenth Circuit has identified factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement ...; and (4) [whether] the placement is indeterminate." *Estate of DiMarco v. Wyoming Dept. of Corrections,* 473 F.3d 1334, 1342 (10th Cir. 2007). "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco,* 473 F.3d at 1342 (citation omitted).

In this case, the factors identified by the Tenth Circuit in *DiMarco* weigh against finding that Plaintiff has an enforceable liberty interest. As discussed above, Plaintiff has not alleged any effect of his placement in segregation on the duration of his sentence. As for extreme conditions, Plaintiff states that he is not allowed "to walk around" (ECF No. 1, at 12) and cannot order food from the commissary (*Id.*). These conditions do not implicate a liberty interest. *See DiMarco,* 473 F.3d at 1343 (inmate had access to the basic essentials of life, although her access to certain amenities was more limited than the general population); *Blum v. Federal Bureau of Prisons,* 189 F.3d 477 at * 3 (10th Cir. Aug. 23, 1999) (disciplinary segregation that left inmate "without store privileges, radio, phone calls, etc. that other inmates just being held in segregation had the privileges of" was "not different in such degree and duration as compared with the ordinary incidents of prison life to be a protected liberty interest under the Due Process Clause") (internal

quotation marks citations omitted); *McCoy v. Denning,* 2006 WL 1360121 at * 4 (D. Kan. May 17, 2006) (segregation where inmate allowed only "one visiting day, one hour of recreation, restricted commissary, no t.v., no radio, and other privileges that are restricted" did not allege conditions significantly more restrictive or atypical than "to be normally expected by one serving a jail term") (internal quotation marks and citation omitted); *cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does allege that his placement in segregation is indeterminate. However, he acknowledges that periodic reviews of his segregation status are conducted. (*See* ECF No. 1, at 12). This appears to satisfy due process requirements. *See Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of administrative segregation status); *Kelly v. Brewer,* 525 F.2d 394, 400 (8th Cir. 1975) ("where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in meaningful way ..."); *Hunt v. Sapien,* 480 F. Supp. 2d 1271, 1277 (D. Kan.) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually), *reconsideration denied,* 2007 WL 1520906 (D. Kan. 2007).

Because Plaintiff has not established a protected liberty interest, he was not entitled to the procedural due process afforded by *Wolff v. McDonnell*, 418 U.S. 539 (1974). Count I of the Complaint is subject to dismissal for failure to state a claim.

### B.  Count II – Cruel and Unusual Punishment

Plaintiff's Complaint also fails to state a claim for cruel and unusual punishment under the Eighth Amendment.  A successful Eighth Amendment claim requires a plaintiff to demonstrate evidence of both objective and subjective components.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id.*  For the subjective component, the plaintiff must establish that the official subjectively acted with "deliberate indifference to [his] health or safety."  *Farmer*, 511 U.S. at 834 (citations omitted).

To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind.  *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride*, 240 F.3d at 1291; *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks.").  Deliberate indifference requires "a higher degree of fault than negligence." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (other citations omitted); *Farmer*, 511 U.S. at 835.  A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment. *Id.*  It follows that

plaintiff must allege facts indicating that defendants actually knew of but disregarded a serious risk to him, rather than that they should have been aware of possible danger.  *Id.*

In evaluating Plaintiff's claim, the Court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved.  *See Turner v. Safley*, 482 U.S. 78, 85 (1987). "[M]aintaining internal security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

Plaintiff alleges Defendants violated his constitutional rights by placing him in segregation and denying him the ability to purchase food from the commissary.  Plaintiff's allegations do not demonstrate that the conditions of his incarceration placed him at substantial risk of serious harm. *Farmer*, 511 U.S. at 834.  The Complaint does not meet the objective component of an Eighth Amendment claim and therefore fails to state a claim for violation of Plaintiff's Eighth Amendment rights by Defendants.

### C.  Violations of Policy, Procedure, Rules, and Regulations

In discussing Counts I and II, Plaintiff makes allegations that Defendants violated policies, rules, and regulations.  Plaintiff's allegations are vague, and he provides few details or factual support for his allegations.  The violation of internal prison rules and regulations does not rise to the level of a constitutional violation.  As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…."  *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dep't. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007); *see also*, *Brown v. Rios*, 196 F. App'x 681, 683 (10th Cir. 2006) ("Where a liberty or property interest has been infringed, the process which is due under the United States Constitution is that measure by the due process clause, not prison regulations."). The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).

### D.  Retaliation

Plaintiff does not make a specific claim for retaliation in the Complaint, but he mentions retaliation several times. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d

at 1144)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Plaintiff fails to state a retaliation claim.  His allegations do not include specific facts showing retaliation because of his exercise of constitutional rights.  He includes no facts that tie his filing of lawsuits to his placement in segregation.  His personal belief that there is a connection is not enough.

### E. Claim for Damages

Plaintiff seeks damages "for mental anguish suffered."  Plaintiff's request for damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Plaintiff's claim for damages is subject to dismissal.

### F.  Request for Injunctive Relief/TRO

Plaintiff also seeks injunctive relief and a temporary restraining order "for those involved in retaliatory actions" and release from segregation.  (ECF No. 1, at 15).

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

## IV. Response Required

For the reasons stated herein, Plaintiff's Complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why his Complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **December 6, 2021**, in which to show good cause, in writing, why his Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

DATED:  This 5th day of November, 2021, at Topeka, Kansas.

s/  Sam A. Crow
**SAM A. CROW**
**U.S. Senior District Judge**