In The United States District Court for Kansas

Shaidon Blake
      Plaintiff

v.                                    Case No.   21-3176-SAC

Marsha Bos, et al.
      Defendant

Response To Show Cause Order

Here comes Shaidon Blake pro se in response to this Honorable Courts show cause order declaring the following:

The full panoply of rights due a defendant during a criminal trial are not available in a prison disciplinary hearing, yet at least the minimum requirements of procedural due process appropriate for the circumstance must be observed.

Part of the function of notice of a prison disciplinary hearing is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are. Even in cases involving administrative seg based upon a prisoners membership in a gang, The Supreme Court requires that a prisoner placed in administrative Seg be provided the ability to present a rebuttal to the accusations used to confine, assuming the existance of a liberty interest.

The hearing requirement for placement into administrative Seg is a bedrock requirement of due process, that such hearing be held in a meaningful manner. In reconizing that states may create liberty interests to freedom from restraint that has, in the context of prisoners rights, limited those interests to freedom from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of prison life. The inquiry into the severity of confinement assesses whether

differences in conditions between a restrictive housing status and the general population constitutes a significant hardship. (Taylor v. Rodriguez, 238 F. 3d 188  2001 2nd cir.)

The plaintiff asserts that his exile to administrative seg using the OSR (Other Security Risk) provision was not lawful. The plaintiff was not afforded the ability to present evidence in his defense of the States claim used to justify the placement. No hearing pre placement or otherwise was conducted denying the plaintiff the ability to refute the false claims. This denial includes plaintiff's constitutional ability to confront his accusers and present evidence or witnesses on his behalf.

Plaintiff, before his OSR placement, was sentenced to Disciplinary Seg time for a total of 180 days plus restriction of privileges for approx 150 days and 90 additional days of lost of phone privileges with $300.00 in fines, for 6 disciplinary infractions. Only one of these infractions did the plaintiff have an actual hearing for, which got him 30 days disciplinary Seg. While serving this seg time, the plaintiff was ordered to call the hearing office so she could conduct the additional 5 hearings. While on the call, plaintiff was asked for a defense, but hearing officer Sgt. Randolph refused to except the defense given because it implicated a officer in misconduct. Plaintiff was told to stop disrespecting the reporting officer, meaning to stop giving my defense. She warned that if I didn't stop she would hang up, and thats what she did. Plaintiff presents to this Honorable Court under the penalties of perjury the same defense Sgt Randolph would not except. The plaintiff was written a disciplinary report by Sgt Holterth

2

because plaintiff accused her of undue familiarity with the midnight porter. Her anger was ignighted when she got caught talking to herself on holding a conversation with back and forth dialog. Plaintiff along with many others laughed at her and she retaliated with a bogus disciplinary report. She entered plaintiffs cell @ 3:30 AM while the unit was out for breakfast and removed plaintiffs TV saying she got notice it was stolen. Plaintiffs name and ID number was clearly visible on the TV.

   The hearing was begun on 8-17-20 @ 0932 hrs, and over the phone hearings are recorded. Plaintiff requested copies of all (5) hearings that got the additional 150 days seg. They dont exist except for the partial hearing ended by Sgt. Randolph. Hearing disposition states on 8-18-20 staff assistance Knapp was sworn in and also states UT Knapp has no questions or witnesses to call. This is improper and illegal because all hearings are under penalties of perjury due to effectively being sworn in. Also to falsify official documents is illegal. UT Knapp as plaintiffs staff assistance or advocate was required by law to consult with plaintiff on a defense but never did making his testimony false and his representation ineffective, a mere formality. (Case No. 20-08-069, 20-07-267, 20-07-263, 20-08-163, 20-07-284) whats clear about these cases making the fraud obvious is case No. 20-07-267 was held by LT. Johnson, while the other (4) cases held by Sgt. Randolph. All (5) hearings have the same date 8-17-20 and the same time 0932 hs. It would be impossible to hold (5) hearings on the same date and time with (2) different hearing officers. They have verbatim

the same reason for not affording the plaintiff his due process of a
fair and impartial hearing "Offender has made disrespectful comments
towards Reporting officer and had been warned several times but
continued the comments. He had been warned multiple times to stop
but continued then hung up." This your Honor is a lie, and one that
was repeated on every DR that got plaintiff sentenced to 180 days
which eventually turned to a Indefinate sentence on O.S.R.

    Sgt Randolph and the plaintiffs history is mared by the
Sgt's attempt to interfere with a federal civil suite brought by
the plaintiff (Blake v. JRay 5:18-CV-03146-SAC) Sgt Randolph
made comments concerning one of the defendants In that matter
Warden Paul Snyder. Plaintiff filed a complaint with the warden
who replaced Snyder, warden Cline, concerning the onslaught of
retaliation in the form of disciplinary reports and disrespectful
confrontations by Staff @ EDCF, to no avail. Once warden
Snyder left EDCF he took over as warden at WCF where
Sgt Randolph relocated once her husban was promoted to major
at EDCF. All of the DR's plaintiff recieved were possession and
intoxication when each incident the cell mate of plaintiff claimed
possession. Every time it was a cell entry and plaintiff was In
bad sleep while cell mate woke at desk. All contraband was
found on desk In a common area thats no longer common if
plaintiff is asleep. (See ex# 1A highlighted portion. Officer
Blair states plaintiff was asleep) (also see same ex, on the
back is a continuation of this officers testimony. Blair states
the toilet water was off to prevent flushing but states plaintiff

dropped something in the toilet, but did not "fish it out of the toilet" as toe states. Normally officers do just that, "fish it out" to have evidence preserved for the hearing, and in order to have the lab test the alledged CDS, know of which Blair or anyone done. Also, to claim intoxication, the officer must have medical staff assess the plaintiff to come to a medical conclusion of intoxication, this was never done, but nurse did deem call mate intoxicated. Also the reporting officer, Blair's partner, never mentioned any thing about plaintiffs throwing anything in the toilet on the disciplinary report. Nothing not mentioned on the report can be used as evidence at the hearing. (See ev #1 B disposition case# 20-07-263, highlighted part of 1A cont. To compare for inconsistancy. Ex# 1 C shows Sgt Randolph held this hearing #1 C cont. Shows date 8-17-20 0932 hrs and cont. 8-18-20. Also important to note plaintiff's request for wit ness, Sgt Gorman to refute all claims. This witness was requested on 8-11-20, hearing continued, but witness never called. Ex# 1 D also shows Sgt Randolph held this hearing Ex 1 D cont. shows date 8-17-20 @ 0932 hrs. & cont on 8-18-20, Ex# 1 E shows LT Johnson was hearing officer, 1 E cont shows date 8-17-20 @ 0932 hrs and cont. 8-18-20.)

These exhibits expose the fraud with undisputable evidence due to it being imposible to hold all these hearings at the same time on the same date with two different hearing officers. Plaintiff asserts that because of his federal lawsuite against the former warden and friend of Sgt. Randolph, plaintiff has been the target of retaliation and this abuse amounts to federal

witness tampering and intimidation, due to plaintiff being a
witness on his own behalf in a federal civil suite filed against
associates of those attacking him.

During the disciplinary seg time being served illegally without
any hearings, in violation of due process and equal protection
under the law, plaintiff was physically restrained, forced to take
morphine and fentanal and taken to the hospital against his will
which is the subject of civil suite complaint No. 5:21-cv-03046-
SAC, Blake v. Wallace. During this trip a false allegation was made
by SORT officer chiles, claiming petitioners powerful negative
influence on the compound. Stating plaintiff made statements
claiming to control the compound and expresses how dangerous
plaintiff is. The reporting officers partner, SORT officer Sanchez
reported to Unit Team Henke that this statement was not true, yet
plaintiff has been exiled to Indefinate time on admin. seg with
out any hearing on the merits. No disciplinary report was written
for threatening and intimidation or any other disciplinary infraction,
it was clearly just time to release the plaintiff off of Dis. seg. (see
ex# 1 F. Falsified statement used to change status from Dis seg,
with an end to the sentence, to DSR will an unending sentence.
Report also claims "STG concerns" under comments for reason
to keep plaintiff on seg. Even with out incident or hearing to
dispute absorb claim.)

Civil Complaint # PWG-20-3563, Request for preliminary Injunction
in the U.S District Court for Maryland, the plaintiffs jurisdiction of
conviction, Blake v. Green, the plaintiff submitted a seris of

exhibits pertainent to this claim. Ex #1, preliminary injunction plaintiff filed in Butler Co, ks for violation of due process and equal protection under the law, Ex #2 supp. petition for wit. tampering and it. midation. Ex #7 response to plaintiffs grievance concerning mail tampering. Unit Team Manager Patterson was found to have delayed the delivery of plaintiffs legal mail for 22 days on time sensitive legal mail with a 15 day response deadline, causing plaintiff to loose ability to appeal due to Res judicatur. Ex #13 wardens response to emergency informal resolution concerning falsifying dis. hearing records. Being in lock up with out due process. Ex #23 Informal resolution requesting prosecution and investigation of plaintiffs allegations of due process violation by falsified hearing documents and placement in seg with out hearings. Ex #34 &35 Disciplinary appeals for all bogus hearings, affirmed. Ex #53 Grievance about racial jokes made by staff with Unit team Manager Martins response to "handle it in house" after officer acknowledged his racial jokes in violation to I.M.P.P 02-118 which calls for his termination, but Admin. didn't want to address it. And finally, Ex #65 Maryland Parole decision denying plaintiff parole for disciplinary history.

The bogus disciplinary reports caused plaintiff to get passed on parole, but no true resolution to neither DR refered to was had. The six DR's were written in classification reports as (22) DR's because each DR had multiple charges. So to the board it appears like plaintiff caught 22 different DR's. Plaintiff would like it to be observed that prior to his involuntary

transfer from Maryland, plaintiff had 3 disciplinary reports in 13 years, and none for over 5 years before the transfer. It wasn't until shipped to Kansas, and civil suite was filed that the DR's came, all at EDCF are due to retaliation.

Prison authorities may not refuse to interview an inmates requested witnesses without assigning a valid reason or the refusal is deemed arbitrary and capricious without the proof of the rationallity of his position. In Ayers v. Ryan, 152 f.3d 77 (1998 2nd Cir.) The court found that the hearing officer violated plaintiffs due process rights by undertaking to act as his assistant, then failing without explaination to assist. By Sgt Randolph falsify hearing documents naming UT Knapp as staff assistance to justify ending plaintiffs hearings with a guilty decision, she violated due process. The equal protection clause is violated because everyone brought on disciplinary charges are afforded a hearing and plaintiff was denied this garonteed right. Also for the 058 claim, plaintiff asked for the author of the false report made on 8-3-20, his partner to be questioned as a witness to refute the false claim, but this was not done. It wasn't until the plaintiff caught officer Sanchez on the tier doing a escort that plaintiff questioned him concerning the verosity of his parners statement claiming petitioner made threatening comments, in which he responded that the statement was not correct. In his words "The conversation was taken out of context. Blake never threatened anyone" This state- ment was made to Unit team Supervisor Henke, This

should have been enough to free the plaintiff, but it didn't. Had due process and equal protection been observed as requested, officer Sanchez's statement would have been before the Seg review board. In ayers, the court remanded the case for reconsideration concerning the protected liberty interest of the plaintiffs for longterm seg.

UT. Knapp violated plaintiffs due process rights by under-taking to act as staffs assistance and then doing nothing to assist. This failure to assist, the courts in Eng v. Coughlin, 858 F.2d 889, 898 (2d cir. 1988), found to violate an inmates limited due process rights. (Fox v. Coughlin 893 F.2d 475 (2d cir. 1990) held that prison authorities may not refuse to interview an inmates requested witness.)

falsifying misconduct reports in retaliation for an inmates resort to legal process is a violation of the 1st amend.'s garuntee of free access to the courts. (mitchell v. Horn, 318 F.3d 523 (2003 3d cir.)) The court in Mitchell states "government actions, which standing alone do not violate the constitution, may nonetheless be constitutional torts if motivated in substantial part by a ~~free~~ desire to punish an individual for exercise of a constitutional right" Quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d. cir. 2000) Quoting Thaddeus v. Bledter, 175 F.3d 378, 386 (6th cir. 1999) (en banc)

A prisoner alleging retaliation must show (1) constitutionally protected conduct. Plaintiffs right to call witness, present a defense and have a hearing. (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness

from exercising his constitutional rights. Plaintiff being sanctioned with Seg time for reporting misconduct by staff and for filling a civil suite. Evident when Sgt Randolph questioned me about the suite with negative comments. (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. (Rauser v. Horn, 241 f.3d 330, 333 (3d. Cir. 2001 quoting Allah, 229 f.3d at 225) soon as plaintiff presented his defense to Sgt Randolph, she immediately became offended and imposed a sanction of Seg time with out completing a hearing. Once plaintiff filed complaints concerning her violation of due process, plaintiff was assaulted, forced meds said was for pain even though no request for pain meds were made, and OSK status was assigned giving plaintiff an indefinite sentence of Seg.

In Allah the courts held that "falsifying reports to keep a prisoner in administrative Seg. to punish him for filling civil rights complaints stated a retaliation claim. In Mitchell the courts concluded "that several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his 1st amend. rights. The courts also stated "we agree with Mitchell that the word "retaliation" in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him."

To succeed on a retaliation claim, a prisoner plaintiff need not establish an independant constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his 1st amed.

rights by retaliating against him for his protected speech activities" Quoting Allah v. Seiveling, 229 F.3d 220.

" where a plaintiff alleges that his confinement in administrative seg. resulted in reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequat access to legal research materials and assistance, a fact finder could conclude from those facts that retalitory continued placement in admin. confinement would deter a person of ordinary firmness from exercising his 1st amend. U.S. constitutional rights." (Quoting Allah v. Seiveling)

In Namu v. Fauver, 82 F. 3d 63, 65 (3d. Cir. 1996) the courts states" we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."

It is well settled that prisoners have a constitutional right to access to the courts, which requires access to adequat law libraries (Bounds v. Smith, 430 U.S, 817, 828, 52 L.Ed. 2d 72, 97 S.CT 1491 (1977) See also (Lewis v. Casey, 518 U.S 343, 355, 135 L.Ed. 2d 606, 116 S.CT. 2174 (1996) (recognizing the constitution requires that prisoners be provided the tools to challenge the conditions of thier confinement) (Crawford-El v. Britton, 523 U.S 574, 588 n.10, 140 L.Ed. 2d 759, 118 S.CT 1584 (1998) (stating that "the reason why retaliation offends the constitution is that it threatens to inhibit exercise of the protected right")

Just like Allah, plaintiff alleges that his confinement in admin.

Seg, resulted, inter alia, in reduced access to phone calls, reduced access to recreation. In fact no recreation at all for months, confinement in a cell for 24 hours for months, denial of access to rehabilitative programs, no access to any religious service, significantly inadequet access to legal research materials. Plaintiff being a Maryland prisoner can only research legal materials as limited as they are here in Kisses, over the computer in the law library, not available for anyone in Seg.

The confinement of plaintiff on OSR, indefinite admin. Seg creates a liberty interest created by state officials with out due process in relations to the ordinary incidents of prison life. In Wolff v. McDonnell the courts expressed "Though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." The constitutional protections retained by prisoners include those afforded by the due process clause against arbitrary deprivations of liberty. Some protected liberty interests flow directly from the due process clause itself. (See, e.g., Washington v. Harper, 494, U.S. 210, 221, 22, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990))

In Hatch v. District of Columbia, 184 F.3d 846 (1999), Hatch argues that assuming he had a liberty interest in avoiding confinement in Seg, then he was entitled to the more elaborate protections specified in Wolff, which include the opportunity to 'call a witness and present documentary evidence in his defense." 418 U.S. at 566.

ordinary life in prison, a prisoner is afforded up to 12 hours of out of cell time a day, compared to the normal 1 hour 5 days a week for admin. Seg. This 1 hour as stated earlier, plaintiff does not even get. Recently, staff at EDCF created a unit in population that everyone after serving seg time must go to before entering a normal housing unit. In this unit, prisoners only get 30 minutes out of cell time daily. After serving out our sentences or time on admin. seg, prisoners are now required to get less out of cell recreation time then the law prescribes for any type of segregation, and that is General population. These conditions are double jepordy even triple because our sentence is served in extreme terms, people are held long beyond dis. Seg time and the excuse is it must be a trade off, a body for a body, which no law supports or rule or policy.

   The state officials claims of "STG concerns" for reason to keep plaintiff confined in Seg is unlawful and not based upon any evidence or incidents. Just the mere fact alone the plaintiff was associated with a gang is not enough to justify the placement. It is a fact the plaintiff is a Inter State Corrections compact prisoner sent to kansas from Maryland. kansas Dept. of Corr. knew prior to transfer, the plaintiffs affiliation and still excepted the transfer. It is also a fact plaintiff has no affiliation with any gangs or any persons in kansas. Goal is now a non affiliate and been that way for over 10 years. Intel reports from Maryland given to KDOC supports this. Also

EDCF has gang affiliated prisoners in general population as they should, this is a maximum security prison, and regardless of past affiliations, plaintiff has not committed any acts to justify indefinate seg. State officials has no valid explanation or due process and equal protection, a guaranteed right, would not be in question. A fair impartial hearing for the DR's and the false allegation made would have been afforded plaintiff is it not been for retaliation, and the desire to silence plaintiff.

As discussed, this placement on admin. Seg has an effect on the duration of plaintiff's' sentence when parole board stated the last year or so was full of disciplinary actions, actions unbeknown to the board, were false and not resolved properly as due process and equal protection under the law requires. The periodic reviews are not real but a mere formality. You have a PMC board which is comprised of Unit team, psycology dept., Intel dept., Administration Cpt. and social worker, but at EDCF only a partial board ever heard my review. Only unit team, phycology or unit team & capt. This is not a PMC Board as perscribed by Internal Management and policy. Intel is the reason plaintiff is stuck in admin. Seg due to STG concerns and for over a year, none of them have ever been present for my review deligitimizing the process. Hunt v. Sapien, 480 f. supp. 2d 1271, 1277, (D.Kan) as this Honorable Court quoted states" where an inmate is held in seg.

For a prolonged or indefinate period of time, due process requires that his situation be reviewed periodically In a meaningful way." Because no meaningful review was ever held with out EAI being present or a complete board, because It takes the agreement of the entire board to release the plaintiff, the plaintiff is entitled to the procedural due process afforded in Wolff v. McDonnell, requiring relief.

　　To satisfy the objective and subjective components of a cruel and unusual claim the plaintiff has presented evidence to show the deprivation was objectively sufficiently serious and that the officials acted subjectively with deliberate indifference. Further example is exhibit #16. Informal resolution to EAI, inted dept. that gave the recommendation that got plaintiff placed on indefinate Seg. This corres- pondence came as a result of plaintiffs phone priviledges being suspended for 90 days per EAI, not a hearing officers guilty finding. The plaintiff was under such an attack that he attempted to contact Maryland Dept of Corrections H.Q, the ICC Coordinator Ms. Patricia Smith as a last resort to report the atrocities being perputrated against him, It is true this call was a 3-way call made In violation of IMPP 44-12-211 (A), but the listed sanction upon a guilty finding is 30 days restriction. Which is only served upon your release from Seg as stated in regulations. As the exhibit #16 shows, plaintiff was sanctioned 90 days

loss of phone priviledges, and while still on seg, in violation of listed policy. Even more cruel, the sanction was more than 90 days. From 10-16-2020 to 1-18-21 for a total of 95 days. When the plaintiff tried to resolve even this miscalculation error on the part of EAI, the plaintiff was informed, either way your phone wont come back on until 1-18-21

Whats important to notice is during this pandemic, the Sec. of correction issued a memo to all prisons in Kansas ordering Administration to not suspend any ones phone due to the serious loss of this pandemic. for the obvious reason. Peoples lives were dramatically at stake and the phrase 'here today gone tommorrow' was the rule of law. Tommorrow was and still not a gaurentee for no one, and the Secretary knew this thus giving prisoners, including plaintiff and those on all forms of seg, access to the phone. EAI disregarded this provision and the only reason is due to plaintiff being a person who constantly avocates for his rights garanteed by the constitution. This meets both objective and subjective components of cruel and unusual punishment. Every day for 95 days the plaintiff feared loosing family to Covid-19 with no ability to contact any one, especially his 8 children and 8 grandchildren, an elderly mother and other family.

The threat that Covid-19 posed on the world including the family of the plaintiff was totally disregarded in a clear display of deliberate indifference. Plaintiff wrote the Warden, Unit team Martin, Hoefner, and classification Admin. DOS to no

avail. also the substantial risk ~~to~~ of serious harm is by being 50 years old with high colesterol, heart complications that require daily use of atorostatin, baby asperin and Nitro pills on standby, and being stuck in a cell 24 hours a day without any recreation. It is evident by the substantial weight increase plaintiff has had of over 45 pounds during his stay on Seg. This weight increase poses a substantial risk to the life of the plaintiff. A risk not shared by those in general population. The plaintiff's weight remained steady around 225 pounds his entire stay in general population because of access to exercise machines, recreation yard, and walking to chow hall and resources offered at EDCF. The evidence given shows all defendants acted with a culpable state of mind in a display of deliberate indifference. The law, Federal and State prohibits state officials from detaining a prisoner for more that 23 hours on Admin. Seg. This requires prison officials to accomodate prisoners with a recreation out of cell time for at least one hour daily. 23 and 1 does not mean monday~friday, 5 days a week, or it wouldn't be 23 and 1. To know this and disregard it for reasons not considered lawful under federal and State law is deliberate indifference to my pain and suffering and to my constitutionally protected rights. ~~the risk also~~

To know a substantial risk of serious harm exists and disregard that risk by failing to take reasonable measures to abate it, makes the defendants liable under the 8th amend.

for denying humane conditions of confinement. Mc-Bride, 240
F.3d at 1291. This is the definition of gross negligence.

Plaintiffs claims for damages are substantiated by the injury
that occurred during this Atypical cruel and unusual indefinate
sentence on admin. Seg. This occurred during a use of force
call made which officers responded to the seg unit and
physically restrained plaintiff into a restraint chair and
against his will, he was administered morphine and
fentanol for pain before being rushed to the emergency
room at Wesley Hospital. During a use of force, in
order to justify this use of force, plaintiff had to be
discruptive and threatening to himself, staff or the
institution, none of which applied to plaintiff which is
evident by no disciplinary report being wrote, a mandatory
part of the use of force procedure, or how else could you
justify the use of force without an infraction of KDOC
policy.

Plaintiff suffers from diagnosed P.T.S.D. due to being assaulted
by prison staff in Maryland. This assault dramatically altered
plaintiffs life and caused him to be paranoid to the point of
needing medication. plaintiff has been subjected to admin.
Seg for a total of 10½ year of the 15 years in carcerated.
Pretrial for a year, transfered to prison to begin sentence only
to be in general pop. for 30 days than sent to admin. Seg for
3 years straight before transfered to kansas where plaintiff
stayed in pop for 1 year before shipped back to Maryland for

appeal. In Maryland, DOC HQ kept plaintiff on admin. Seg for 3 years before agreeing to release plaintiff into general pop, where he stayed for 2 years until he was placed back on admin. seg for 2 year then shipped back to Kansas. After 5 months in RDU (classification) with out much movement, just like seg, plaintiff was in population at LCF for 6 months before shipped to EDCF on Seg where he stayed for 6 months then released into general population. After recieving 30 days dis. seg, plaintiff has been in Seg every since, amounting to almost 16 months.

To do over 10 years in seg, effects the mental health of the plaintiff as recognized by mental health staff. Ex#1 H shows professional view of the mental health condidtion of the plaintiff caused by many traumas, to include assault by correctional staff and 1 year prectrial seg in violation of federal and state law. (See McGriff et al. v. United States No. 04-CR-966 (S-7) (2007)) By placing plaintiff in the same seg conditions that caused him to be shipped to Kansas violates his Constitutional rights. The state of Maryland had to ship the plaintiff out because the courts ruled it arbitrary and capricious to detain a person in seg indefinately.

Sec. 803 (d) of the prison litigation Reform act (42 USCS § 1997 e (e)), predicates a prisoners claim for mental or emotional injury suffered while in custody on a showing of accompanying

physical injury. Plaintiff suffered back issues, not limited to but including
siatica caused by limited movement and the physical restraint applied
by corrections staff which was treated in chronic care with
mobic, and shots to ease the extreme discomfort. Plaintiff ~~suffed~~
suffered a mental break from a combination of harrasement
that was undefendable and unprovoked along with being indefinately
lock in a cell on admin. seg. This caused the plaintiff to go on
crisis status suicidal. Under § 1997 e(e) the statutory section
contains no requirement that the injury be more than de minimis
Plaintiffs injuries suffered meets the even more than 'de minimis
standard that applies to claims for compensatory damages; and to
vindicate the violations to plaintiffs constitutional rights, he
seeks punitive damages, to punish egregious violations of the
rights gaurenteed under the Constitution perpetrated by the
defendants.

$\quad$ § 1997 e(e)'s reference to remedies for mental injuries suffered
in the past tense implies that it does not restrict prospective
equitable relief. (See Harris v. Garner, 190 F. 3d. 1279, 1288 (11th cir.
1999)) Vacated and reh'g en banc granted, 197 f.3d 1059 (11th cir. 1999)
and Davis v. Dist. of Columbia, 332 U.S App. D.C. 436, 158 f.3d 1342,
1346 (D.C. cir. 1998))
" Prisoners often must rely on the courts as the only available
forum to redress their grievances, even when those grievances seem
insigificant to one who is not so confined" See Deutch v.
United States, 67 F.3d 1080, 1091-92 (3d cir. 1995) ~~Deutsch~~ at 1090.
$\quad$ Plaintiff has stated a claim upon which relief can be granted

and therefore requests the following relief:

1. compensitory damages
2. punitive damages.
3. Order releasing plaintiff into general population
4. Order requiring defendants to produce recorded disciplinary hearings listed in this complaint.
5. Order requiring defendants to produce evidence that a proper investigation into claims that got plaintiff indefinate seg on OSR. (Incident report from Off. Chiles w/ Off. Sinchez being interviewed.
6. Order compelling UT Henke to give notorized affidavit of Sinchez statement to him clearing report was not true against plaintiff.
7. Any and all relief this honorable Court deems just and fair.

Plaintiff claims of violation of his 1st, 8th, and 14th amendments to the U.S. Constitution are substeniated in this response to Courts show cause order.

Respectfully Submitted
Shaidon Blake #96323

This response is true under penalties of perjury
Shaidon Blake   11-23-21

This brief was E-filed to the U.S District Court this __ day of _____