22

Exhibits.

1 A - Disposition of disciplinary report 20-07-258, highlighted portion. Front and back

1 B - Disciplinary report 20-07-258 entire report to be considered

1 C - Disposition showing hearing officer was Sgt Randolph. 1 c cont. on back highlighted portion.

1 D - Disposition for Case# 20-08-163 w/ Sgt Randolph as hearing officer. 1 D cont on back high lighted portion.

1 E - Disposition for Case# 20-07-267 w/ Lt. Johnson as hearing officer 1 E cont. Disposition of Case 20-07-267 w/ Johnson. Highlighted portion

1 F - Seg review. entirely

1 G - Informal resolution about suspended phone privledges cont. on back.

1 H - psych. Evaluation for plaintiff (pertainent portions) by Dr. Ronald Means, MD, forensic psychiatrist

1 I - Curriculum Vitae (Dr. Means Credentals)

2.2

Ex# 1 A

# DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON    #96323 | CASE NO.  20-07-298 |
|---|---|

## *TESTIMONY*

| |
|---|
| 07/28/2020 1207 hrs. |
| Offender sworn in. |
| Offender enters a plea of not guilty. |
| Offender has not submitted a witness list but is requesting CSI Blair. |
| Offender is requesting to question the R/o. |
| Offender: I was asleep when they came to search the cell. He did his rounds, he said he had a reason to come back, but it had |
| Nothing to do with me, I'm asleep. |
| Case continued to question the R/o. |
| |
| 08/11/2020 |
| Offender sworn in |
| Offender states he was asleep and when they woke him up he questioned staff why they woke him up. When the R/o supposedly |
| Started "talking crazy" to him he informed the R/o that he was not scared of him. |
| R/o sworn in |
| R/o states that she went into the cell and when she went into the cell she found STG material. She states while she was |
| Searching the cell the offender came up to the cell door. He was told to go downstairs and when he went down to the 100 run he |
| Started yelling at CSI Blair. She states she also found tobacco contraband in the form of a homemade lighter and burnt paper. |
| H/o: What was his demeanor like during this? |
| R/o: Very confrontational |
| H/o: Do you recall what he was saying to CSI Blair? |
| R/o: I have no idea I was in the cell and could hear exactly what was being said. |
| The R/o further explains that the offender was puffing out his chest and within a foot of CSI Blair when he was yelling at him. |
| Offender: Did you guys wake me up when you came to my cell? |
| R/o: Blair walked up to your cell I was behind Blair. |
| H/o: Where was the offender at when you approached? |
| R/o: When I approached offender Blake was standing by the toilet. |
| H/o: How far behind Blair were you? |
| R/o: I was right behind him. |
| H/o: Did you smell any smoke in the cell? |
| R/o: When I searched the cell it smelled profusely of smoke. |
| Offender: So that is why you searched my cell? |
| R/o: I searched your cell because I was instructed to do so. |
| No further questions for R/o. |
| Offender wishes to call CSI Blair as witness. |
| CSI Blair unavailable (SCK) |
| Case continued to contact witness. |
| |
| 08/12/2020 |
| Offender and CSI Blair sworn in |
| Offender: When you came to the cell was I awake or asleep? |
| Blair: You were asleep. |
| H/o: Where was his cell mate at? |
| Blair: Sitting on the stool, at the desk with his back to the window. Back to the cell door. |
| Offender: What made you search the cell? |
| Blair: It smelled like smoke and your cell mate appeared to be in an altered state. |
| H/o: What was this offenders demeanor like? (offender states he was being an asshole to CSI Blair) |
| Blair: He was asleep and then when I opened the door he did not like being woke up and stated I should not have woke him up. |
| He then came to the toilet and dropped something in the toilet but I had turned the water off so he couldn't flush it. |
| TESTIMONY CONTINUED ON NEXT PAGE ----------------------------------------- >>>>>>>>>>>>>>>>>> |

Ex # 1B

Attachment B, IMPP 11-119
Effective: 12-11-13

# DISCIPLINARY REPORT

_____Central_____
(FACILITY)

| Case No. | Date of Alleged Violation: 7-19-2020 | Time: | 1620 | P.M. |
|---|---|---|---|---|
| Date This Report Written: | 7-19-2020 | Time: | 1703 | P.M. |

Name of Inmate:Blake_____ Sheidon_____ No.  96323___ Cell No:_D-1 232_
               LAST                   FIRST

Duty Assignment:_____L/I - Cause_____

**Alleged Violation of Law or Rule** (*Identify by Code No., Short Title, and Class*)  44-12-901 Dangerous Contraband Class 1.  Threatening and Intimidating Class 1. 44-12-903 Tobbacco Contraband Class 1.  44-12-320A Interfereing With Official Duties, Class 1. 44-12-325C Security Threat Groups, Class 1. 44-12-318 Disruptive Behavior, Class 2.

FACTS: On 7-19-2020 at approximately 1620 CSI Blair informed me he smelled smoke emanating from the cell of DCH D-1 232. CSI Blair further instructed me to go conduct a cell search of that cell. CSI Blair turned off the water to that cell with the chase key. I instructed the inmates not to flush the toilet. CSI Blair then patted down both residents of that cell, offenders: Blake 96323, and Newson 114619. CSI Blair instructed the two offenders to go sit down and wait. Offender Blake then stood at the corner of the top of the stairs outside of his cell. Offender Blake then began to yell loudly, and was attempting to stare CSI Blair down. Offender Blake then stated, "you woke me up to search my cell for this? What the hell is this?" he stated those statements getting louder each time. Offender Blake then stated, "I am not afraid of you Blair, this is some bullshit." CSI Blair gave multiple directives to offender Blake to go sit down at one of the tables, instead Offender Blake kept attempting to yell over CSI Blair. I entered the cell, conducting a cell search. Upon entering the cell I found what appeared to be some sort of smoking material located in the toilet. It consisted of several papers that were burned. I further found razor blades that had multiple burn marks on them. I found further smoking material located on the desk on the common area underneath the shelves. I found a clip that was altered, to use for a smoking lighter. It was incased in baby oil, inside of a cap, with a wick sticking out of it. I also found the wrapping to toilet paper. I found a drawing that may possibly security threat groups; had drawings of crowns stating legacy. CSI Blair had both inmates assessed by medical, and notified the captains office of my findings.

Due to the above, I COI Northrup Charge offender Blake with 44-12-901 Dangerous Contraband Class 1. 44-12-306 Threatening and Intimidating Class 1. 44-12-903 Tobbacco Contraband Class 1.  44-12-320A Interfereing With Official Duties, Class 1. 44-12-325C Security Threat Groups, Class 1. 44-12-318 Disruptive Behavior, Class 2.

Staff Witnesses: CSI Blair_____

(Attach Additional Sheet(s) if necessary)
(Signature)

COI L. Northrup  F/S 14-22  DCH
Printed Name and Title of Employee Writing Report

Approved by: _____
(Shift Supervisor, Unit Team Manager & Title)

320

165

30

25

I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct.

Executed on _7-19-2020          Signature_____

I received a copy of this report on _____, _____    REFUSED COPY 6.Vi-
                                    (Date)    (Time)              (Inmate Signature & No)

I served a copy of this report 7-20-70 _____  CSI_____
                               (Date)   (Time)    (Signature of Officer or Unit Team Manager & Title)

A2-149    Ex # 1 C

| INMATE NAME & NO  # 96323    BLAKE, SHIDON | CASE NO. 20-07-263 |

☐ Witness(es) Sworn In/Affirmed  _____    _____

_____    _____    _____

Witness(es) Testimony / Cross Examination (Attach Testimony)

Closing Statement(s):  (Attach Arguments)

If applicable include inmate's testimony/ arguments on restitution

Sanction(s):   203-60 Days Rest., $10.00 Fine C.S. Imposed
311-60 Days Rest., $10.00 Fine C.S. Imposed
312-Not Guilty
901-45 Days D/S, 60 Days Rest., $20.00 Fine C.S. Imposed
903-30 Days Rest., $5.00 Fine C.S. Imposed
Re-Impose case #20-03-780 90 Days Rest. C.S. Imposed
Reason for Sanctions:              Sentence Guidelines

Disposition of Evidence:  return lamp, fan and pills to offenders, rest hold 90 days then destroy_____

☒   Inmate advised of right to Appeal,   Inmate Initial _____ Advised _____

HEARING OFFICER SIGNATURE   CSI Randolph                    DATE:   08/18/2020

FINAL ACTION BY FACILITY WARDEN:
☑ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more
  than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than
  $20.00

Comments: _____

WARDEN/DESIGNEE SIGNATURE          8/21/2    DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____                    DATE   8/25/2020
INMATE SIGNATURE

I served a copy of the Hearing Record

_____                    8/25/2020
STAFF SIGNATURE                    DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.

EX#1 D

A2-149

Page 2 of 3, Attachment L, IMPP 11-119
Effective: 12-11-13

| INMATE NAME & NO  # 96323    BLAKE, SHIDON | CASE NO. 20-08-163 |
|---|---|

☐ Witness(es) Sworn In/Affirmed    _____    _____

_____    _____    _____

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s):  (Attach Arguments)**

**If applicable include inmate's testimony / arguments on restitution**

Sanction(s):   211a- 30 Days Rest. C.S. Imposed
-
Reason for Sanctions:          Sentence Guidelines   _____

Disposition of Evidence:  _____ N/A _____

☒  Inmate advised of right to Appeal,  Inmate Initial _____ **Advised** _____

HEARING OFFICER SIGNATURE    CSI Randolph          DATE: 08/18/2020

**FINAL ACTION BY FACILITY WARDEN:**

☑ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more
  than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than
  $20.00

Comments: _____

_____          8/24/2
WARDEN/DESIGNEE SIGNATURE          DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____          8/25/2020
INMATE SIGNATURE          DATE

**I served a copy of the Hearing Record**

_____          8/25/2020
STAFF SIGNATURE          DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R. 44-13-707. Harmless error; Plain error.

| INMATE NAME & NO  # 96323   BLAKE, SHIDON | CASE NO. 20-07-267 |
|---|---|

☐ Witness(es) Sworn In/Affirmed   _____   _____

_____   _____   _____

**Witness(es) Testimony / Cross Examination (Attach Testimony)**

**Closing Statement(s):  (Attach Arguments)**

**If applicable include inmate's testimony/ arguments on restitution**

Sanction(s):   901- 45 days D.S. 60 days rest. $20.00 fine C.S. Imposed
903- 60 days rest. $10.00 fine C.S. Imposed
203- 60 days rest. $20.00 fine C.S. Imposed
313- $5.00 fine C.S. Imposed
311- 60 days rest. $20.00 fine C.S. Imposed

Reason for Sanctions:        Sentence Guidelines

Disposition of Evidence:        Hold for appeals / Destroy

☒  Inmate advised of right to Appeal,   Inmate Initial        Advised

| HEARING OFFICER SIGNATURE    Lt. Johnson, A.J. | DATE:   08/23/2020 |
|---|---|

**FINAL ACTION BY FACILITY WARDEN:**

☑ APPROVED
☐ REINSTATE DISMISSED CHARGES; REMAND NEW HEARING
☐ AMEND THE CHARGE
☐ DISAPPROVE/DISMISS
☐ REDUCE THE PENALTY
☐ SUSPEND ALL OR PART OF SENTENCE
☐ REMAND NEW HEARING
☐ CLARIFICATION OF RECORD

☐ REDUCE TO SUMMARY JUDGMENT
- restriction from privileges up to 10 days
- fine not to exceed $10.00
- extra work w/o incentive pay for no more
  than 2 hrs/day no more than 5 days
- work w/o incentive pay not to exceed 5 days
- restitution not less than $3.00 or more than
  $20.00

Comments:

_____        8/26/20

WARDEN/DESIGNEE SIGNATURE        DATE

I received a Copy of the Hearing Record and understand I have 15 days to Appeal this decision.

_____        _____

INMATE SIGNATURE        DATE

**I served a copy of the Hearing Record**

_____        9-8-2020

STAFF SIGNATURE        DATE

Technical and clerical errors in the writing and/or processing of the Disciplinary Report shall not be grounds for dismissal, unless there is substantial prejudice to the inmate, which is the burden of the inmate to prove. Pursuit to K.A.R 44-13-707. Harmless error; Plain error.

# DISPOSITION OF DISCIPLINARY CASE

| INMATE NAME & NO  # BLAKE, SHIDON   #96323 | CASE NO.  20-07-267 |
|---|---|

## *TESTIMONY*

08/17/2020 0932 hrs.

Offender has made disrespectful comments towards R/o and had been warned several times but continued the comments.

He had been warned multiple times to stop but continued then hung up phone.

Hearings are now in absentia.

Staff assistance will be assigned.

e-mail sent to R/o.

Case continued.

08/18/2020

Staff assistance assigned is Unit Team Knapp and sworn in.

Unit Team Knapp has no questions or witnesses to call.

Case continued for R/o.

08/23/2020

E-mail received from R/o stating her report is both accurate and true.

UTS Knapp states he nor the offender wish to add anything.

Offender found in violation of altered state of consciousness, dangerous and tobacco contrabands due to a preponderance of Evidence. This H/o believes the offender was aware and in possession of a leafy substance which is presumed to be an illicit illegal substance with mind altering affects. The offender was in an altered state of consciousness after he had consumed this illegal substance. The offender was also aware and in possession of smoking paraphernalia in the form of burnt pencil lead and Melted outlets' indicating he was using the electrical outlet as an improvised lighter. The offender was also in possession of stolen Electronic items and photos that contained pornographic imagery. No witness list.

## KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☐ 180 DAY | ☐ YEARLY | ☐ BMU |
|---|---|---|---|---|---|

| Name: BLAKE, Shidon | DOC# 96323 | Date: 9/21/2021 |
|---|---|---|

| Date of placement: 9/29/2020 | Location: EDCF-C | Current Cell Location: A2-127 |
|---|---|---|

| IMPP Segregation Status: IMPP 20-104 IB (13) OSR | Inmate Appeared? ☒ Yes ☐ No |
|---|---|

### SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 9/8/2020 | Facts: On 8/4/2020, offender Blake, Shidon #96323, was placed in Administrative Segregation to serve Disciplinary Segregation for DRs he received on 8/04/2020 #069 Dangerous Contraband (brown leafy substance-46 days DS); 7/18/2020 #298 Dangerous Contraband (razor blades & altered clip); 7/18/2020 #267 Dangerous Contraband - 45 days; 7/16/2020 #284 (Being Drunk, Intox, Altered State of Consciousness) 15 days & Dangerous Contraband - 45 days. Offender has a very lengthy DR history. He has made numerous threats to staff and has received 3 DRs for threatening/intimidating staff during his current incarceration. In addition, on a daily basis, offend makes erratic and aggressive statements toward and regarding staff. Specifically, during a recent off-site transport, offender stated staff were "messing with him" and if staff didn't leave him alone, he is going to "make shit happen." Offender Blake has also stated that he is the only inmate who can "unite the entire compound regardless of gang affiliations; There will be war." He also stated "if anyone touches me they will fucking die. My guys will pull up on their house." Offender Blake also claims to have a great authority within the Bloods and a Jamaican gang (no name given). Offender stated they will come over whenever he needs them and will take care of the "problems." Each time he mentions "his Jamaican People" his accent changes. Offender also commented that his brother is one of the most powerful men in Jamaica, but is now incarcerated. As a result of the actions and statements made by offender Blake, Shidon #96323, it is necessary for the safety and security of the El Dorado Correctional Facility, that he is placed on Admin Segregation on Other Security Risk status. | ASR | File |
| 10/14/2020 | DR for making 3-way calls | OMIS | FILE |
| 2/26/2021 | Resident moved from BCH to ACH | OMIS | File |
| 5/18/2021 | DR conviction for Less Dangerous Contraband (homemade smoking devise). | OMIS | FILE |
| 8/31/2021 | Resident Blake was assigned a random cell mate today and accepted the move without any issues. Mr. Blake has been difficult to house in the past, however with the last two cell mates Mr. Blake has accepted them with no issues. This willingness to work with security and unit team staff has been a great help to the safe and secure running of this cell house. | CRONO | File |

### SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 1/4/2021 | Offender chose to attend RHRB | EDCF B |
| 2/1/2021 | Offender chose to attend RHRB | EDCF B |
| 3/19/2021 | Offender chose to attend RHRB | EDCF A |
| 4/23/2021 | Offender chose to attend RHRB | EDCF A |
| 5/21/2021 | Resident chose not to attend RHRB | EDCF A |
| 6/18/2021 | Resident chose not to attend RHRB | EDCF A |
| 8/17/2021 | Resident chose to attend monthly RHRB | EDCF A |
| 9/21/2021 | Resident chose to attend RHRB | EDCF A |

**INMATE'S COMMENTS:** I want to release to EDCF GP. I am ready to get out of the STG stuff and do my thing.

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☐  No ☒ | Yes ☐  No ☒ | Yes ☐ No ☒ | Yes ☐  No ☒ |

**REASONS FOR RECOMMENDATIONS:** Retain due to placement facts. Offender is an interstate compact from the Maryland Dept of Corrections. Offender is a high-ranking STG and is a risk to the safety and security of the facility. Contact the EDCF EAI department for more information.

| BHC Gulliver | CSIII Fuoss | CMII Walmsley |
|---|---|---|
| Clinical Staff (Retain ☒ Release ☐) | Security Staff (Retain ☒ Release ☐) | Classification Staff (Retain ☒ Release ☐) |
| Comments: Placement facts | Comments: Placement facts | Comments: Placement facts |

### PMC REVIEW/SIGNATURES

| PMC Member (Retain ☒ Release ☐) | PMC Member (Retain ☐ Release ☐) | PMC Member (Retain ☒ Release ☐) |
|---|---|---|
| Comments: Placement facts | Comments: STG Issues in G.P. | Comments: |

### DEPUTY SECRETARY REVIEW

Deputy Secretary, Facility Management    Retain ☐    Release ☐    Date_____

EX 1 G

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

RECEIVED
NOV 10 2020
EDCF EAI

Blake
Last Name Only

**KANSAS DEPARTMENT OF CORRECTIONS**

96323
Number

**INMATE REQUEST TO STAFF MEMBER**

To: EAI  T.K. O'Brian                   Date: 11-3-20
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I wrote to understand why my phone usage was suspended by EAI for 3 attempts under IMPP 4412-211 (A) when the selection for this 90 days restriction which can't be served while inmate hole or seg. I need you to fix my phone for me in order to contact my family during this pandemic. and I never need you here w/ me. Can get handled another way. This pandemic.

Work Assignment:                          Living Unit Assignment: A2 131
Comment:                        Unit Team Members Signature: _____

Disposition: _____

To: Blake 96323                          Date: 11/10/2020
(Name & Number)

Disposition: On 10/14/2020 your phones were suspended due to continued misuse of your phone privileges by violating IMPP 44-12-31, several times. It will stay suspended until your 90 days are up which is 1/18/21.

_____ EAI
Employee's Signature

P-0009b                                   To be returned to inmate.

Back  ⟶

CONFIDENTIAL – ATTORNEY'S EYES ONLY

6. Medical records from the Kansas Department of Corrections, dated March 3, 2010 to January 10, 2011
7. Interview with Hope Fike, LMSW, Mr. Blake's former prison therapist, on July 12, 2011
8. Interview with Francoisine Smith, Mr. Blake's significant other, on July 12, 2011

## III. Summary of Opinion

It is my opinion, to a reasonable degree of medical certainty, that as a direct result of the attack by correctional officers on June 21, 2007, Mr. Blake's symptoms and the course of his Posttraumatic Stress Disorder significantly worsened.

## IV. Basis of Opinion

### A. *Blake's Personal Background*

Shaidon Blake is a 39-year-old, African-American male. Mr. Blake was assaulted by correctional officers while in the Maryland Reception Diagnostic and Classification Center on June 21, 2007. Since being assaulted, Mr. Blake indicated that he has experienced increased mental health symptoms caused by the assault. He has filed a civil action in the United States District Court for the District of Maryland under the Civil Rights Act. The following is not an exhaustive recitation of Mr. Blake's personal background, but is indicative of the facts contributing to his mental illness.

Mr. Blake was born in Maryland but moved to California as an infant. His mother was 15 years old at the time of his birth. For the first 11 years of his life, he was raised by his mother, along with his two younger brothers. His childhood was very disrupted as a result of his mother's neglectful care and her problems with drug use. His mother rarely worked and relied on financial support from her various boyfriends. Mr. Blake's mother frequently moved the family, and Mr. Blake's father played no role in his early childhood.

At age 11, Mr. Blake and his family moved back to Maryland in order to reside with a maternal aunt. His mother soon left, leaving Mr. Blake there. After reconnecting with his father, Mr. Blake tried living with him briefly because he believed his aunt was too strict. His father also had problems with addiction, and his paternal grandmother, with whom they lived, drank heavily. While residing with his father, Mr. Blake was encouraged to engage in sexual activity as early as age 12. He witnessed domestic violence between his father and his father's girlfriends. Eventually, he stopped living with his father and began a series of moves to New York, Louisiana and eventually back to California. Mr. Blake earned his high school diploma while attending a juvenile "reform school," after which he moved to North Carolina, where his mother had moved.

In North Carolina, at age 18, he met and married his now ex-wife. He was with her for eight years, and they conceived two daughters. After his marriage ended, Mr. Blake has been in three other significant long-term relationships. He has seven biological children, conceived with four different women. His children range in age from 7 to 18. He has legal custody of his 13-year-old son who is now cared for by Mr. Blake's mother.

3

Ex 1 H Cont

CONFIDENTIAL – ATTORNEY'S EYES ONLY

the attack. In addition, Mr. Blake became increasingly isolated, refusing prison services and insisting on being alone.

Although initially resistant to treatment, Mr. Blake eventually began to receive mental health services. Not only was he restarted on antidepressant medications, but he was also prescribed antipsychotic medications, in order to decrease his reactivity and hypervigilance. Eventually, he stopped taking the medications because of side effects and his own concern regarding dependence upon the medication.

After transfer to the Hutchinson Correctional Facility in Kansas, Mr. Blake continued to receive psychotherapy. He noted having "spurts" of anxiety, and he worked with a therapist to learn ways to manage the anxiety. While at the facility in Kansas, Mr. Blake required ongoing therapy for severe anxiety that his therapist believes was directly related to the assault upon him while at the Maryland Reception Diagnostic and Classification Center.

After Mr. Blake learned that he would be transferred back to the Maryland Reception Diagnostic and Classification Center, his anxiety peaked. Since being back in the Maryland Reception Diagnostic and Classification Center, his sleep has worsened again and his hypervigilance is highly elevated because of fear of attack.

C.   *Blake's Mental Status*

The first interaction with Mr. Blake was in a large waiting room area with many passersby. He was agitated and upset. It was necessary to calm him until a private area could be found for interview. Once in a private area, Mr. Blake was calm, cooperative and polite. He sat with his back against the wall in the corner, despite being in a large room with a desk.

His mood was generally bright, and he had a full range of facial expression. At times though, when discussing traumatic episodes in his life, such as the 2007 assault, he became upset, pensive and disconnected. He tried to avoid discussing some topics, but eventually did so openly.

He maintained good eye-contact. There were no obvious motor abnormalities. The rate, rhythm and volume of his speech were normal.

His thought process was logical and goal-directed. He denied suicidal or homicidal thoughts. He denied perceptual disturbances such as auditory or visual hallucinations. His cognition was grossly intact, and he was alert and oriented to person, place and time. His insight and judgment were good.

D.   *Blake's Posttraumatic Stress Disorder*

Mr. Blake is a 39-year-old man with a long-standing history of Posttraumatic Stress Disorder. Posttraumatic Stress Disorder occurs in some who are exposed to a traumatic event in which the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or



CONFIDENTIAL – ATTORNEY'S EYES ONLY

# EXHIBIT 1 A

## *Curriculum Vitae*

### EDUCATION

| | |
|---|---|
| 08/94 – 05/98 | University of Michigan - Ann Arbor, MI<br>Bachelor of Arts - Psychology |
| 08/98 – 05/02 | Case Western School of Medicine – Cleveland, OH<br>Medical Doctor |

### POSTGRADUATE EDUCATION AND TRAINING

| | |
|---|---|
| 07/02 – 06/05 | University of Maryland/Sheppard Pratt – Baltimore, MD<br>General Psychiatry Residency |
| 07/05 – 06/07 | Johns Hopkins Hospital - Baltimore, MD<br>Child and Adolescent Psychiatry Fellowship |
| 07/07 – 06/08 | University of Maryland – Baltimore, MD<br>Forensic Psychiatry Fellowship |

### CERTIFICATIONS

| | |
|---|---|
| 05/07 – 12/17 | American Board of Psychiatry and Neurology – Diplomate in the Specialty of Psychiatry |
| 05/09 – 12/19 | American Board of Psychiatry and Neurology – Diplomate in the Specialty of Forensic Psychiatry |
| 11/10 – 11/20 | American Board of Psychiatry and Neurology – Diplomate in the Specialty of Child and Adolescent Psychiatry |

### MEDICAL LICENSURES

| | |
|---|---|
| 09/05 – 09/11 | State of Maryland |

### EMPLOYMENT HISTORY

### ACADEMIC APPOINTMENTS

| | |
|---|---|
| 12/07 – 06/08 | Clinical Instructor – University of Maryland School of Medicine - Baltimore, Maryland |
| 10/10 – present | Clinical Assistant Professor - University of Maryland School of Medicine – Baltimore, Maryland |

### OTHER EMPLOYMENT

| | |
|---|---|
| 06/98 – 08/98 | Teaching Assistant – Health Career Enhancement Program for Minorities, Cleveland, Ohio |
| 06/99 – 07/99 | Supervisor – Shaker Teen Health Corps - Shaker Heights, Ohio |

1

Ex # 1 I Cont.

CONFIDENTIAL – ATTORNEY'S EYES ONLY

| | |
|---|---|
| 06/99 – 09/99 | **James Comer Minority Research Fellow** - American Academy of Child and Adolescent Psychiatry |

**Heart Lung and Blood Institute Research Fellow** - National Institute of Health Advisor – Robert L. Findling, MD – University Hospitals of Cleveland, Department of Child and Adolescent Psychiatry
- created research project – "Nefazodone in Children with Post-traumatic Stress Disorder"
- interviewed and assessed posttraumatic children
- performed data analysis

07/03 – 06/04 **Black Psychiatrists of America Resident of the Year**

## LOCAL AND NATIONAL SERVICE

08/98 – 05/99 **Students for AIDS Virus Education** - SNMA program
educated children at the local Boys and Girls Club about sexually transmitted diseases and teenage pregnancy

08/99 – 05/00 **Better Access to Healthcare**
educated about and recruited for free medical insurance for disadvantaged children and pregnant women

08/99 – 06/02 **Big Buddies** – tutor and mentor

02/08 – 06/08 **Saint Ignatius Loyola Academy** - tutor

## GRANT SUPPORT

07/04 – 06/07 **American Psychiatric Association and Substance Abuse Mental Health Services Administration Minority Fellowship**
- served on the *Council of Psychiatry and the Law*
- created research project – "Factors related to revocation of conditional release" Advisor – Angela Kim-Lee, MD – Clifton T. Perkins Hospital
- created and supported programs about mental health issues in minority populations
- Funds granted – $43,428

## PROFFERED COMMUNICATIONS

### POSTERS

10/97 **Foggarty Minority Research Symposium** – Ann Arbor, MI
presented research for Foggarty International Research Fellowship

10/99 **American Academy of Child and Adolescent Psychiatry** – Chicago, IL
presented "Nefazodone for Children with Post-traumatic Stress Disorder"

### ORAL

7/99 **Heart, Lung and Blood Institute Summer Research Conference** - Case Western School of Medicine, Cleveland, OH
presented "Nefazodone for Children with Post-traumatic Stress Disorder"

3